**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| TRADER JOE'S COMPANY, a California Corporation,<br><br>                              Plaintiff,<br><br>          v.<br><br>CENTURY 18 INC. d/b/a CRAZY BEREL, a New York Corporation; and DOES 1-10, inclusive,<br><br>                              Defendants. | <u>JURY TRIAL DEMANDED</u><br><br><br>CASE NO. _____<br><br><br><u>COMPLAINT</u> |

Plaintiff Trader Joe's Company ("Trader Joe's"), by and through its undersigned counsel, for its Complaint against Defendant Century 18 Inc. d/b/a Crazy Berel ("Century 18" or "Defendant") and Defendants DOES 1-10 ("Does 1-10"), hereby alleges, on knowledge as to its own conduct and otherwise on information and belief, as follows:

<u>NATURE OF THIS ACTION</u>

1.       Defendant Century 18 is engaged in a deliberate and coordinated scheme to trade off the goodwill of Trader Joe's famous brand and trademarks via both the unauthorized resale of TRADER JOE'S®-brand products and the use of confusingly similar product labels to sell the same products Trader Joe's is famous for selling.

2.       Century 18's unauthorized and unlawful conduct puts the health and safety of Trader Joe's customers at risk.  It also damages the substantial reputation and goodwill that Trader Joe's has carefully cultivated in its brand and trademarks over the last 55 years. Accordingly, Trader Joe's seeks injunctive relief and monetary damages for Century 18's trademark infringement, false designation of origin, false advertising, unfair competition, and trademark dilution under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c), and related New

York state law.

3.     Century 18's resale activities are not authorized by Trader Joe's and occur outside the scope of Trader Joe's stringent quality-control standards.  As a result, customers who purchase Trader Joe's products from Century 18 via its website (as well as via its presence on online commerce sites such as Amazon.com, eBay.com, and Walmart.com) receive products that are materially different from the genuine TRADER JOE'S®-brand products customers have come to recognize and expect.  Indeed, customers describe TRADER JOE'S®-brand products purchased from Century 18 as "disgusting," "melted," "cracked and in pieces," or otherwise damaged or defective, and they likely unfairly blame Trader Joe's for the poor condition of the products.

4.     Moreover, in a clear attempt to convey the false impression that Century 18 and its products are affiliated with or endorsed by Trader Joe's, Century 18 also advertises, distributes, and sells products bearing packaging that is strikingly similar to the packaging of genuine TRADER JOE'S®-brand products.  Customers are likely to mistakenly believe Century 18's knockoff products are genuine Trader Joe's products.  Indeed, that appears to be Century 18's clear goal.  As the example below demonstrates, Century 18's product packaging features the abbreviation "TJ" (a common nickname for "Trader Joe's"), as well as numerous other trademarks and package design elements owned and/or publicly associated with Trader Joe's:

| Authentic Trader Joe's Product | Defendant's Knockoff Product |
|---|---|
|  |  |

5.      Century 18's wrongful actions have produced, and unless enjoined by this Court, will continue to produce a likelihood of consumer confusion and dilution of Trader Joe's trademarks, causing irreparable harm to consumers and Trader Joe's.

## THE PARTIES

6.      Trader Joe's is a California corporation with its principal place of business at 800 South Shamrock Avenue, Monrovia, California 91016.  Trader Joe's is engaged in the business of selling high-quality groceries at low prices, including thousands of its own products under the TRADER JOE'S® brand label.  Trader Joe's owns numerous federally registered and common-law trademarks associated with its retail grocery chain and its products.

7.      Upon information and belief, Defendant Century 18 Inc. is a New York corporation with its principal place of business at 12 Bayview Avenue, Unit 621, Lawrence, New York 11559.  Upon information and belief, Century 18 also does business or has also done business as Crazy Berel.

8.      Trader Joe's is unaware of the names and true capacities of Defendants Does 1-10, and therefore sues them by their fictitious names.  Upon information and belief, discovery will reveal the true identities and specific conduct of those defendants and Trader Joe's will then amend this Complaint to identify them by name.  Trader Joe's alleges that Does 1-10 participated in the misconduct alleged herein and are therefore liable for the same.  Trader Joe's further alleges that, at all times, each Doe defendant was acting as an agent, partner, joint venturer, integrated enterprise, or alter ego of each of the other defendants and each were co-conspirators with respect to the wrongful conduct alleged herein such that each is responsible for the acts of the other.  Moreover, Does 1-10 not only participated in the infringing acts alleged herein, but each was a moving, active, and conscious force behind Century 18's and the other defendants' decision to engage in the infringing acts, or otherwise caused the infringement to occur.

## JURISDICTION AND VENUE

9.      This action asserts claims arising under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a) and 1125(c), and related claims under the laws of the State of New York.  This Court has

subject matter jurisdiction over the federal trademark infringement and unfair competition claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, because those claims are related to and arise from the same set of facts as Trader Joe's federal claims.

10.     This Court has personal jurisdiction over Century 18 because, *inter alia*, Century 18 resides and transacts business in the State of New York, engages in a persistent course of conduct in the State of New York, expects or reasonably should expect its acts to have legal consequences in the State of New York, and Century 18's acts have caused harm and continue to cause harm to Trader Joe's in the State of New York.

11.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because Century 18 resides in this judicial District, a substantial part of the events giving rise to the claims asserted in this action occurred in this judicial District, Century 18 expects or reasonably should expect its acts to have legal consequences in this judicial District, and Century 18's acts have caused harm and continue to cause harm to Trader Joe's in this judicial District.

## GENERAL ALLEGATIONS

### A.     The Trader Joe's Story

12.     Trader Joe's is a national chain of neighborhood grocery stores founded in 1967 in Pasadena, California, that has become famous for its unique shopping experience and products.  Trader Joe's has always prided itself on its carefully chosen high-quality and unique food selection.  Today, the name "Trader Joe's" is synonymous with high-quality, affordable groceries, and there are now more than 530 Trader Joe's grocery stores in the United States.

13.     The widespread success of Trader Joe's is due in large part to its carefully cultivated reputation and its consistent focus on service and products.  Trader Joe's is especially serious about food safety and quality.  The state-of-the-art distribution centers that receive, store, and allocate Trader Joe's products to its stores do so pursuant to exacting quality control standards.  Trader Joe's requires its vendors to ship food products to distribution centers in lot-controlled packaging and in sealed, temperature-monitored shipping containers.  Each delivery

received at a distribution center is inspected for evidence of product tampering, mishandling, and other issues that could affect the quality and safety of the goods.  The distribution centers also restrict access to areas where food products are stored, to ensure their security and safety.

14.     Trader Joe's also follows strict quality control procedures in its stores.  Before accepting a store delivery, a Crew Member at the receiving store inspects the goods and reports any perceived issues.  And once products are in stores, Trader Joe's Crew Members regularly monitor inventory for quality and safety issues, *e.g.*, through regular checks of the expiration dates on products on the sales floor.

15.     This extensive quality control infrastructure allows Trader Joe's to ensure that its products are safe, fresh, and high quality, and to quickly investigate any issues that may arise. And because Trader Joe's owns and operates every Trader Joe's store, it can quickly pull from shelves any product that it determines has failed to meet its high standards.

16.     Trader Joe's routinely refuses requests from third parties seeking to purchase TRADER JOE'S®-brand products and resell them in other venues because of the difficulty of ensuring that these third parties will ship, handle, and store food products pursuant to Trader Joe's exacting standards.  Trader Joe's also refuses such requests because it wants its products to be sold exclusively through the unique shopping experience provided by its stores.  Trader Joe's does not sell its products online or offer delivery or curbside pickup for these same reasons.

### B.     Trader Joe's Intellectual Property Rights

17.     Trader Joe's uses the mark TRADER JOE'S® to identify not only its retail stores and services, but also the majority of the goods it sells at its retail stores.  Of the approximately 4,000 items Trader Joe's stocks at its stores, about eighty percent bear the TRADER JOE'S® mark.  TRADER JOE'S®-brand products include (or have included) TRADER JOE'S® Triple Ginger Snaps, TRADER JOE'S® Dried Fruit Freeze Dried Strawberries, TRADER JOE'S® Vitamin E Oil, TRADER JOE'S® Gyoza Dipping Sauce, TRADER JOE'S® Toffee Chips, TRADER JOE'S® Rice Orzo Pilaf Mix, TRADER JOE'S® Yogurt Pretzels, TRADER JOE'S® Dark Chocolate Covered Pretzel Slims, TRADER JOE'S® Dark Chocolate Covered Cherries,

TRADER JOE'S® Milk Chocolate Peanut Butter Cups, TRADER JOE'S® Dark Chocolate Covered Caramels, TRADER JOE'S® Cocoa Truffles, TRADER JOE'S® Dark Chocolate Sea Salt Caramels, TRADER JOE'S® Joe's Dark Coffee, TRADER JOE'S® Organic French Roast Cold Brew Coffee Concentrate, TRADER JOE'S® Milk Thistle Dietary Supplement, TRADER JOE'S® Orange Gummy C Dietary Supplement, TRADER JOE'S® Coconut Crispy Rolls Wafer Cookies, TRADER JOE'S® Organic Chocolate Chip Chewy Granola Bars, TRADER JOE'S® Plantain Crisps, TRADER JOE'S® Chocolate Chip Cocoa Meringues, and TRADER JOE'S® Ginger Snowball Cookies.

18.    The United States Patent and Trademark Office ("USPTO") has granted Trader Joe's Trademark Registration No. 2,171,157 for the trademark TRADER JOE'S® for "retail store services in the field of specialty foods and beverages" in International Class 42.  This registration is valid, subsisting, and incontestable pursuant to 15 U.S.C. § 1065.

19.    The USPTO has also granted Trader Joe's Trademark Registration No. 4,001,531 for the trademark TRADER JOE'S® for "retail grocery services" in International Class 35.  This registration is valid, subsisting and incontestable pursuant to 15 U.S.C. § 1065.

20.    Additionally, Trader Joe's has obtained numerous United States trademark registrations for the mark TRADER JOE'S® for a wide variety of food and beverage products. These registrations include Registration No. 2,160,601 in International Class 29 (canned, dried, and processed foods); Registration No. 1,424,176 in International Class 30 (staple foods and chocolate); Registration No. 2,156,879 in International Class 30 (sauces, baked goods, baking ingredients, and seasonings); and Registration No. 2,158,990 in International Class 32 (beverages).  Each of these registrations is valid, subsisting, and incontestable pursuant to 15 U.S.C. § 1065.  True and correct copies of these and other TRADER JOE'S® trademark registrations are attached hereto as **Exhibit 1**.

21.    Trader Joe's has also obtained United States trademark registrations for several of its popular product lines.  For example, Trader Joe's owns federal registrations for the EVERYTHING BUT THE BAGEL® trademark in International Class 29 for "Snack dips [and]

6

lox" (Registration No. 5,968,218) and International Class 30 for "Seasonings" (Registration No. 5,642,768); and for the EVERYTHING BUT THE ELOTE® trademark for "Seasonings" (Registration No. 6,186,460) (collectively, the "TJ's 'Everything But' Trademarks").  True and correct copies of these trademark registrations are attached hereto as **Exhibit 2**.

22.     All of Trader Joe's trademarks discussed *supra*, including the TJ's "Everything But" Trademarks," are referred to collectively as the "Trader Joe's Trademarks."

23.     Trader Joe's federal trademark registrations for the Trader Joe's Trademarks were duly and legally issued, are valid and subsisting, and constitute *prima facie* evidence of Trader Joe's exclusive ownership of the Trader Joe's Trademarks.  Trader Joe's has also acquired common law rights in the use of the Trader Joe's Trademarks throughout the United States.

24.     Trader Joe's has invested significant time, money, and effort in advertising, promoting, and developing the Trader Joe's Trademarks.  Trader Joe's promotes its products through carefully curated channels.  It produces a newsletter, "The Fearless Flyer," which is distributed at Trader Joe's stores and emailed to more than 700,000 customers throughout the United States.  Trader Joe's also advertises on its podcast, various social media platforms, and on its website, www.traderjoes.com.  The Trader Joe's website receives over 3.4 million visitors monthly even though customers cannot place orders there, a testament to the popularity of its brand.  The website offers information about Trader Joe's products, stores, and its commitment to the community.

25.     As a result of such actions, Trader Joe's has established substantial goodwill and widespread recognition in its Trader Joe's Trademarks, and those marks have become associated exclusively with Trader Joe's and its products by both customers and potential customers.  They have also achieved great fame both within and outside the United States.

26.     At no time has Trader Joe's consented to Century 18's use of the Trader Joe's Trademarks.

## <u>DEFENDANT'S INFRINGEMENT AND DILUTION OF<br>TRADER JOE'S INTELLECTUAL PROPERTY RIGHTS</u>

27.　　Without Trader Joe's approval or authorization, Century 18 advertises, offers for sale, and sells hundreds of TRADER JOE'S®-brand products on its own website, www.crazyberel.com, as well as on online platforms such as eBay.com, Amazon.com, and Walmart.com.  Examples of Century 18's online listings for these products are attached hereto as **Exhibit 3**.

28.　　Upon information and belief, Century 18 and/or individuals operating at Century 18's direction have purchased and continue to purchase, have transported and continue to transport, and have stored and continue to store TRADER JOE'S®-brand products for the purpose of reselling them online.

29.　　Century 18 has resold and is reselling hundreds of TRADER JOE'S®-brand chocolate products, snack items, seasoning blends, beauty products, supplements, and seasonal products, including but not limited to TRADER JOE'S® Triple Ginger Snaps, TRADER JOE'S® Dried Fruit Freeze Dried Strawberries, TRADER JOE'S® Vitamin E Oil, TRADER JOE'S® Gyoza Dipping Sauce, TRADER JOE'S® Toffee Chips, TRADER JOE'S® Rice Orzo Pilaf Mix, TRADER JOE'S® Yogurt Pretzels, TRADER JOE'S® Dark Chocolate Covered Pretzel Slims, TRADER JOE'S® Dark Chocolate Covered Cherries, TRADER JOE'S® Milk Chocolate Peanut Butter Cups, TRADER JOE'S® Dark Chocolate Covered Caramels, TRADER JOE'S® Cocoa Truffles, TRADER JOE'S® Dark Chocolate Sea Salt Caramels, TRADER JOE'S® Joe's Dark Coffee, TRADER JOE'S® Organic French Roast Cold Brew Coffee Concentrate, TRADER JOE'S® Milk Thistle Dietary Supplement, TRADER JOE'S® Orange Gummy C Dietary Supplement, TRADER JOE'S® Coconut Crispy Rolls Wafer Cookies, TRADER JOE'S® Organic Chocolate Chip Chewy Granola Bars, TRADER JOE'S® Plantain Crisps, TRADER JOE'S® Chocolate Chip Cocoa Meringues, and TRADER JOE'S® Ginger Snowball Cookies.  The TRADER JOE'S®-brand products resold by Century 18 include several products that Trader Joe's has not sold in its stores for several years or more, and which are, on information and belief, past their expiration date.

8

30.     All of these activities are conducted or have been conducted outside the scope of Trader Joe's stringent quality-control standards as well as its established product recall practice. As a result, Trader Joe's cannot ensure that its products, when sold by unauthorized resellers such as Century 18, have not been tampered with or otherwise mishandled in a manner that causes the products to be unsafe for consumer use.  Nor can Trader Joe's protect the marketplace from products that may be subject to recall because Trader Joe's has no way to retrieve products purchased by resellers.

31.     Century 18's continued infringement thus creates a material risk that customers who purchase TRADER JOE'S®-brand food products from Century 18 will be harmed by receiving materially different and/or dangerous or defective goods.  Indeed, numerous customers have commented online about their negative experiences with TRADER JOE'S®-brand food products purchased from Century 18.  Examples of these customer comments are shown below and attached hereto as **Exhibit 4**.









32.     Additionally, on information and belief, Century 18 has resold and is reselling TRADER JOE'S®-brand products at significantly higher prices than Trader Joe's charges for the same products.  Century 18's continued infringing conduct and resale of TRADER JOE'S®-brand products at significantly higher prices also creates a material risk that Century 18's customers will mistakenly believe that Trader Joe's charges higher prices for its products, contrary to Trader Joe's reputation for offering high-quality, affordable groceries.

33.     By creating these risks, Century 18's activities threaten the reputation and goodwill that Trader Joe's has carefully cultivated over the last 55 years.  Century 18's actions also substantially harm Trader Joe's and its customers by selling customers TRADER JOE'S®-brand products that may be unsafe or of inferior quality due to the lack of quality control that they have come to expect from Trader Joe's.

34.     Century 18's conduct results in consumer confusion as well as dilution of the Trader Joe's Trademarks because customers do not receive from Century 18 the quality TRADER JOE'S®-brand products that they believe they are purchasing.

10

35.     In addition to its unauthorized and infringing resale of TRADER JOE'S®-brand products, Century 18 is also advertising, offering for sale, and selling a line of seasoning products under the infringing label "TJ Spice Co."  Examples of the TJ Spice Co. line are attached hereto as **Exhibit 5**.

36.     In a clear attempt to convey the false impression that Century 18's TJ Spice Co. line is affiliated with or endorsed by Trader Joe's, the line incorporates Trader Joe's Trademarks (including the TJ's "Everything But" Trademarks), the abbreviation "TJ" (a common nickname for "Trader Joe's"), and package design elements that are owned and/or publicly associated with Trader Joe's.  The extent to which Century 18 is seeking to trade off Trader Joe's reputation and goodwill is readily demonstrated by the following screenshots of Trader Joe's and Century 18's respective products:

| Authentic Trader Joe's Product | Defendant's Knockoff Product |
|---|---|
|  |  |

| Authentic Trader Joe's Product | Defendant's Knockoff Product |
|---|---|



| Authentic Trader Joe's Product | Defendant's Knockoff Product |
|---|---|
|  | |

37.     Century 18 has never been authorized, licensed, or otherwise granted permission by Trader Joe's to use the Trader Joe's Trademarks, including the TJ's "Everything But" Trademarks, or any other intellectual property of Trader Joe's, in connection with the advertisement, offer for sale, and/or sale of any goods and/or services.

38.     The likelihood of confusion created by Century 18's TJ Spice Co. label is exacerbated by the fact that Century 18 sells products bearing the label on the same websites on which it sells TRADER JOE'S®-brand spice and seasoning products.

39.     Trader Joe's has previously contacted Century 18 on at least two occasions about its unauthorized resale of TRADER JOE'S®-brand products and its infringing TJ Spice Co. label.  Century 18 therefore is aware that its activities constitute trademark infringement and dilution under federal and state law.  Despite these repeated warnings, Century 18 has continued to engage in its infringing activities.

40.     Century 18, upon information and belief, is actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale products with the knowledge and intent that such goods will be mistaken for genuine high-quality TRADER JOE'S®-brand products despite Century 18's knowledge that it is without authority to use the Trader Joe's

Trademarks.  Century 18's actions have and will continue to confuse customers at the time of initial interest, point of sale, and in the post-sale setting to mistakenly believe Century 18's products originate from, are associated with, and/or are approved by Trader Joe's.

41.     Upon information and belief, at all times relevant hereto, Century 18 has had full knowledge of Trader Joe's ownership of the Trader Joe's Trademarks, including its exclusive right to use and authorize use of such intellectual property and its associated goodwill.

42.     Century 18 has copied and otherwise misappropriated the Trader Joe's Trademarks, and related intellectual property, in an effort to exploit Trader Joe's reputation in the market.  Upon information and belief, Century 18 has engaged in its infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Trader Joe's rights for the purpose of trading off the goodwill and reputation of Trader Joe's.  If Century 18's willful infringing activities are not preliminarily and permanently enjoined by this Court, Trader Joe's and the consumer public will continue to be damaged.

## FIRST CAUSE OF ACTION

### (Federal Trademark Infringement / Counterfeiting, 15 U.S.C. § 1114)

43.     Trader Joe's repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

44.     Trader Joe's engages in interstate activities to promote its goods and services using the Trader Joe's Trademarks, as well as the goodwill associated with the Trader Joe's Trademarks, throughout the United States.

45.     The Trader Joe's Trademarks have been, and will continue to be, known throughout the United States as identifying and distinguishing Trader Joe's products and services.

46.     The Trader Joe's Trademarks have been registered with the USPTO, are valid and subsisting, and are in full force and effect.

47.     Defendant willfully and knowingly used, and continues to use, the Trader Joe's Trademarks in interstate commerce for purposes of selling products bearing the Trader Joe's

14

Trademarks online without Trader Joe's consent, permission, or authorization.

48.     Trader Joe's has established and implemented legitimate and substantial quality controls for the storage, transportation, handling, and safety of products bearing the Trader Joe's Trademarks, and abides by these quality controls.

49.     Trader Joe's quality controls are material, as they protect customers and prevent them from receiving inferior quality, damaged, and defective products.

50.     The products bearing the Trader Joe's Trademarks sold by Defendant are not subject to, do not abide by, and interfere with Trader Joe's quality controls and customer service requirements.  As a result, the products sold by Defendant are materially different from genuine products bearing the Trader Joe's Trademarks.

51.     By advertising, distributing, offering for sale, and selling products bearing the Trader Joe's Trademarks outside the scope of Trader Joe's stringent quality-control standards and which are materially different from those sold by Trader Joe's as alleged herein, Defendant is engaging in trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114.

52.     Defendant's unauthorized sale of products bearing the Trader Joe's Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the products Defendant offers for sale are genuine Trader Joe's products when, in fact, they are not.

53.     Defendant's unauthorized sale of products bearing the Trader Joe's Trademarks is likely to cause confusion, cause mistake, or deceive customers because it suggests that the products Defendant offers for sale are sponsored by, authorized by, or otherwise connected with Trader Joe's when, in fact, they are not.

54.     Defendant's unauthorized use of the Trader Joe's Trademarks has infringed upon and materially damaged the value, reputation, and goodwill of the Trader Joe's Trademarks and caused significant damage to Trader Joe's.

55.     Defendant has further engaged in trademark infringement by advertising, distributing, offering for sale, and selling products bearing the confusingly similar TJ Spice Co. label, which is likely to cause confusion, mistake, or deception, or to deceive customers as to the

15

source, origin, affiliation, association, or sponsorship of Defendant's goods or services.  Such products are also likely to falsely mislead customers into believing that Defendant's products emanate from Trader Joe's; are affiliated or connected with Trader Joe's; or are licensed, sponsored, authorized, approved by, or sanctioned by Trader Joe's.  They are also likely to falsely mislead customers into believing that Trader Joe's controls the quality of Defendant's products.

56.    Upon information and belief, Defendant's actions are deliberate and intended to confuse the public as to the source of Defendant's goods or services, to injure Trader Joe's, and to reap the benefit of Trader Joe's goodwill associated with its brand and trademarks.

57.    As a direct and proximate result of Defendant's infringing activities, Trader Joe's has been injured and will continue to suffer injury to its business and reputation unless Defendant is restrained by this Court from infringing the Trader Joe's Trademarks.

58.    Trader Joe's has no adequate remedy at law.

59.    In light of the foregoing, Trader Joe's is entitled to preliminary and permanent injunctive relief prohibiting Defendants from using the Trader Joe's Trademarks, or any marks identical and/or confusingly similar to the Trader Joe's Trademarks, for any purpose.

60.    Trader Joe's is also entitled to recover from Defendant, *inter alia*: all damages that Trader Joe's has sustained and will sustain as a result of Defendant's infringing acts; all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet known; at Trader Joe's election, an award of statutory damages for trademark counterfeiting pursuant to 15 U.S.C. § 1117(c); and the costs of this action and attorneys' fees pursuant to 15 U.S.C. § 1117(a), as well as attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b).

## SECOND CAUSE OF ACTION

### (False Designation of Origin / False Advertising / Unfair Competition, 15 U.S.C. § 1125(a))

61.    Trader Joe's repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

62.    Trader Joe's engages in interstate activities to promote its goods and services

16

using the Trader Joe's Trademarks, as well as the goodwill associated with the Trader Joe's Trademarks, throughout the United States.

63.     The Trader Joe's Trademarks have been, and will continue to be, known throughout the United States as identifying and distinguishing Trader Joe's products and services.

64.     By advertising, distributing, offering for sale, and selling products bearing the Trader Joe's Trademarks outside the scope of Trader Joe's stringent quality-control standards and which are materially different from those sold by Trader Joe's as alleged herein, Defendant is misrepresenting the nature, characteristics, and qualities of its goods and services in violation of 15 U.S.C. § 1125(a).

65.     By advertising, distributing, offering for sale, and selling products bearing the Trader Joe's Trademarks outside the scope of Trader Joe's stringent quality-control standards and which are materially different from those sold by Trader Joe's as alleged herein, Defendant is further violating 15 U.S.C. § 1125(a) by falsely designating the origin of its goods and services, and/or falsely representing sponsorship by, affiliation with, or connection to Trader Joe's and its goods and services.

66.     Defendant has further engaged in false designation of origin and unfair competition by advertising, distributing, offering for sale, and selling products bearing the confusingly similar TJ Spice Co. label, which is likely to cause confusion, mistake, or deception, or to deceive customers as to the source, origin, affiliation, association, or sponsorship of Defendant's goods or services.  Such products are also likely to falsely mislead customers into believing that Defendant's products emanate from Trader Joe's; are affiliated or connected with Trader Joe's; or are licensed, sponsored, authorized, approved by, or sanctioned by Trader Joe's. They are also likely to falsely mislead customers into believing that Trader Joe's controls the quality of Defendant's products.

67.     Upon information and belief, Defendant's actions are deliberate and intended to confuse the public as to the source of Defendant's goods or services, to injure Trader Joe's, and

to reap the benefit of Trader Joe's goodwill associated with its brand and trademarks.

68.     As a direct and proximate result of Defendant's infringing activities, Trader Joe's has been injured and will continue to suffer injury to its business and reputation unless Defendant is restrained by this Court from infringing the Trader Joe's Trademarks.

69.     Trader Joe's has no adequate remedy at law.

70.     In light of the foregoing, Trader Joe's is entitled to preliminary and permanent injunctive relief prohibiting Defendants from using the Trader Joe's Trademarks, or any marks identical and/or confusingly similar to the Trader Joe's Trademarks, for any purpose.

71.     Trader Joe's is also entitled to recover from Defendant, *inter alia*: all damages that Trader Joe's has sustained and will sustain as a result of Defendant's infringing acts; all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet known; and the costs of this action and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## THIRD CAUSE OF ACTION

### (Federal Trademark Dilution, 15 U.S.C. § 1125(c))

72.     Trader Joe's repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

73.     The Trader Joe's Trademarks are individually and collectively famous in the United States.

74.     Defendant's use of copies, variations, reproductions, simulations or colorable imitations of the Trader Joe's Trademarks in connection with Defendant's goods and services will lessen the capacity of Trader Joe's famous and distinctive trademarks to designate Trader Joe's retail stores and products.

75.     Defendant's use of the Trader Joe's Trademarks, combined with its unauthorized resale activities, has diluted and will continue to dilute and tarnish the distinctive quality of Trader Joe's famous and distinctive trademarks.

76.     The aforesaid acts of Defendant constitute dilution by blurring by whittling away the distinctiveness of Trader Joe's famous marks in violation of Section 43(c) of the Lanham

Act, 15 U.S.C. § 1125(c).

77.     The aforesaid acts of Defendant also constitute dilution by tarnishment in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

78.     Upon information and belief, Defendant's dilution of the Trader Joe's Trademarks has been deliberate, intentional, and willful.

79.     As a direct and proximate result of the foregoing acts of Defendant, Trader Joe's has been damaged and has suffered and will continue to suffer immediate and irreparable injury.

80.     Trader Joe's has no adequate remedy at law and is therefore entitled to preliminary and permanent injunctive relief.

81.     Due to Defendant's willful dilution of the Trader Joe's Trademarks, Trader Joe's is also entitled to recover from Defendant, *inter alia*: all damages that Trader Joe's has sustained and will sustain as a result of Defendant's infringing acts; all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet known; and the costs of this action and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## FOURTH CAUSE OF ACTION

### (Common Law Trademark Infringement)

82.     Trader Joe's repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

83.     Trader Joe's owns and enjoys common law trademark rights in the Trader Joe's Trademarks throughout the United States, including but not limited to in the State of New York.

84.     Defendant's infringing activities in appropriating rights in Trader Joe's common law trademarks are intended to capitalize on the goodwill of the Trader Joe's Trademarks for the purpose of Defendant's own pecuniary gain.  Trader Joe's has expended substantial time, resources, and efforts to develop the goodwill and reputation of its brand and trademarks.  As a result of Trader Joe's efforts, Defendant is now unjustly enriched and benefitting from intellectual property rights that rightfully and exclusively belong to Trader Joe's.

85.     Defendant's infringing use of the Trader Joe's Trademarks is without Trader Joe's

permission or authority and in willful and wanton disregard of Trader Joe's rights to control its reputation and intellectual property.

86.     Defendant's unauthorized use of the Trader Joe's Trademarks has caused and is likely to cause confusion as to the source of Defendant's goods and/or services, all to the detriment of Trader Joe's.

87.     Defendant's wrongful actions are willful, deliberate, and intended to confuse the public and/or injure Trader Joe's.

88.     Trader Joe's has been irreparably harmed and will continue to be irreparably harmed as a result of Defendant's aforementioned infringing activities, unless Defendant is permanently enjoined by this Court.

89.     As a result of Defendant's actions alleged herein, Trader Joe's is entitled to injunctive relief.  Additionally, Trader Joe's is entitled to recover, *inter alia*: all damages that Trader Joe's has sustained and will sustain as a result of Defendant's infringing acts; all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet known; and exemplary or punitive damages for Defendant's intentional, willful, and wanton misconduct.

## **FIFTH CAUSE OF ACTION**

### **(Common Law Unfair Competition)**

90.     Trader Joe's repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

91.     Defendant's appropriation, adoption, and use of the Trader Joe's Trademarks and the confusingly similar TJ Spice Co. label on its own products constitute unfair competition in violation of the common law of the State of New York.

92.     Defendant's wrongful actions are intended to capitalize on the goodwill associated with the Trader Joe's Trademarks for the purpose of Defendant's own pecuniary gain. Trader Joe's has expended substantial time, resources, and efforts to develop the goodwill and reputation of its brand and trademarks.  As a result of Trader Joe's efforts, Defendant is now unjustly enriched and benefitting from intellectual property rights that rightfully and exclusively

belong to Trader Joe's.

93.     Defendant's infringing use of the Trader Joe's Trademarks is without Trader Joe's permission or authority and in willful and wanton disregard of Trader Joe's rights to control its reputation and intellectual property.

94.     Defendant's unauthorized use of the Trader Joe's Trademarks has caused and is likely to cause confusion as to the source of Defendant's goods and/or services, all to the detriment of Trader Joe's.

95.     Defendant's wrongful actions were willful, deliberate, and intended to confuse the public and/or injure Trader Joe's.

96.     Trader Joe's has been irreparably harmed and will continue to be irreparably harmed as a result of Defendant's aforementioned infringing activities, unless Defendant is permanently enjoined by this Court.

97.     As a result of Defendant's actions alleged herein, Trader Joe's is entitled to injunctive relief.  Additionally, Trader Joe's is entitled to recover, *inter alia*: all damages that Trader Joe's has sustained and will sustain as a result of Defendant's infringing acts; all gains, profits and advantages obtained by Defendant as a result thereof, in an amount not yet known; and exemplary or punitive damages for Defendant's intentional, willful, and wanton misconduct.

## <u>SIXTH CAUSE OF ACTION</u>

### (Cancellation of Federal Trademark Reg. No. 6,628,111, 15 U.S.C. § 1119)

98.     Trader Joe's repeats, realleges, and incorporates herein by reference the allegations in the foregoing paragraphs as if fully set forth herein.

99.     Under 15 U.S.C. § 1119, the Court has the power to order the cancellation of a federal trademark registration.

100.     Defendant's federal registration for the mark TJ SPICE CO. in International Class 30 for "Spices; Spice blends," U.S. Reg. No. 6,628,111, so resembles Trader Joe's registered and common law trademarks, as to be likely to cause confusion, or to cause mistake or deceive.

101.     Accordingly, Defendant's federal registration for the mark TJ SPICE CO. is

subject to cancellation pursuant to Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Trader Joe's Company hereby demands judgment in its favor and against Defendant Century 18 Inc. d/b/a Crazy Berel as follows:

A.   A Judgment in favor of Trader Joe's and against Defendant as to each of the above Causes of Action;

B.   A Judgment that Defendant has infringed and diluted the Trader Joe's Trademarks and that said infringement and dilution were willful;

C.   An Order granting permanent injunctive relief restraining and enjoining Defendant, its agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them from infringing or diluting the Trader Joe's Trademarks, including but not limited to:

    a.   advertising, distributing, offering for sale, selling, or taking any steps to sell TRADER JOE'S®-brand products, including without limitation on its own websites or any other online platforms such as Amazon.com, eBay.com, and Walmart.com;

    b.   manufacturing, importing, distributing, offering for sale, selling, or taking any steps to sell products bearing the TJ Spice Co. label or any other marks that are identical and/or confusingly similar to the Trader Joe's Trademarks;

    c.   seeking to register or maintaining any application or registration for the mark TJ SPICE CO. or any other marks that are identical and/or confusingly similar to the Trader Joe's Trademarks;

    d.   engaging in any activity constituting unfair competition with Trader Joe's;

    e.   committing any other act with falsely represents, or which has the effect of falsely representing that the goods and services of Defendant are licensed by, authorized by, offered by, sponsored by, or in any other way

associated or affiliated with Trader Joe's;

    f.   inducing, assisting, or abetting any other person or entity in engaging in or performing any of the business activities described in the paragraphs above.

D.   An Order requiring Defendant to file with this Court and to serve on Trader Joe's within ten (10) days after issuance of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

E.   An Order requiring Defendant to recall from any distributors and retailers and to deliver to Trader Joe's for destruction or other disposition all remaining inventory of all goods bearing the Trader Joe's Trademarks or the TJ Spice Co. label, as well as related items, including all advertisements, promotional, and marketing materials;

F.   An Order requiring Defendant to remove all of Trader Joe's trademarks and any other elements likely to cause confusion with Trader Joe's from Defendant's websites and listings on online platforms, including but not limited to Amazon.com, eBay.com, and Walmart.com;

G.   An Award to Trader Joe's of:

    a.   Three (3) times Trader Joe's damages or Defendant's profits, whichever is greater, as well as costs of suit pursuant to 15 U.S.C. § 1117(a) and (b) or, if elected by Trader Joe's, statutory damages under 15 U.S.C. § 1117(c);

    b.   Trader Joe's reasonable attorneys' fees and costs in bringing this action, pursuant to 15 U.S.C. § 1117;

    c.   Punitive and exemplary damages in connection with Trader Joe's claims under New York law;

    d.   Pre-judgment and post-judgment interest in the maximum amount allowable under the law; and

    e.  Trader Joe's costs incurred in bringing this action;

H.    For cancellation of Defendant's federal registration for the mark TJ SPICE CO. in International Class 30 for "Spices; Spice blends," U.S. Reg. No. 6,628,111, pursuant to 15 U.S.C. § 1119; and

I.    For such other and further relief as the Court may deem just, equitable, and proper.

Dated:        October 27, 2022        Respectfully Submitted,

KUBLANOVSKY LAW LLC

By: /s/  Eugene D. Kublanovsky__
Eugene D. Kublanovsky, Esq. (EK 0605)
10 East 39th St., 12th Floor
New York, NY 10016
Tel: (212) 729-4707
Fax: (914) 828-0227
Email: eugene@edklaw.com

Jordan Raphael, Esq.
(*Pro Hac Vice Forthcoming*)
Tim Byron, Esq.
(*Pro Hac Vice Forthcoming*)
BYRON RAPHAEL LLP
811 Wilshire Blvd., 17th Floor
Los Angeles, CA  90017
Telephone: (213) 291-9800
Facsimile: (213) 377-5771
jraphael@byronraphael.com

***Attorneys for Plaintiff***
***Trader Joe's Company***

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Trader Joe's Company hereby demands a trial by jury of all claims in this litigation.

Dated:       October 27, 2022       Respectfully Submitted,

KUBLANOVSKY LAW LLC

By: /s/  Eugene D. Kublanovsky__
Eugene D. Kublanovsky, Esq. (EK 0605)
10 East 39th St., 12th Floor
New York, NY 10016
Tel: (212) 729-4707
Fax: (914) 828-0227
Email: eugene@edklaw.com

Jordan Raphael, Esq.
(*Pro Hac Vice Forthcoming*)
Tim Byron, Esq.
(*Pro Hac Vice Forthcoming*)
BYRON RAPHAEL LLP
811 Wilshire Blvd., 17th Floor
Los Angeles, CA  90017
Telephone: (213) 291-9800
Facsimile: (213) 377-5771
jraphael@byronraphael.com

***Attorneys for Plaintiff***
***Trader Joe's Company***